### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-81124-CIV-RYSKAMP/VITUNAC

7-ELEVEN, INC.,

    Plaintiff,

v.

MAGICJACK, LP,

    Defendant.

### FIRST AMENDED COMPLAINT

Plaintiff, 7-Eleven, Inc. ("SEI" or "Plaintiff"), files this First Amended Complaint against Defendant MagicJack, LP ("MJL" or "Defendant"), and states as follows:

### PARTIES

1.    SEI is a Texas corporation with its principal place of business at 1722 Routh Street, Suite 1000, Dallas, Texas 75201.

2.    MJL is a Delaware Limited Partnership with its principal place of business in West Palm Beach, Florida and no service is required as Defendant has previously appeared herein.

### JURISDICTION AND VENUE

3.    The Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 (excluding interest and costs), and because the dispute is between corporate citizens of different states at all times relevant to this pleading.

4.      The Court has personal jurisdiction over Defendant because its principal place of business is located in West Palm Beach, Florida, and most of the conduct complained of in this petition occurred in Florida.  Further, the contract that is the subject of part of this suit, i.e., the Vendor Agreement, provides that the Defendant submits to the exclusive jurisdiction of the state and federal courts in Palm Beach County, Florida.  Likewise, Defendant has purposefully availed itself to the privileges and benefits of conducting business in Florida.

5.      This action arises out of Defendant's breaches of contract and other conduct that occurred, in whole or in part, in Palm Beach County, Florida.  Venue is proper in Palm Beach County, Florida, pursuant to 28 U.S.C. § 1391(a), because the Defendant's principal place of business is in Palm Beach County, and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Palm Beach County.  Furthermore, the Vendor Agreement that is the subject of this suit provides that Palm Beach County has exclusive jurisdiction.

## FACTUAL BACKGROUND

6.      The MagicJack unit is a small device that plugs into the USB ports of computers. Assuming the purchaser of the unit already has internet access, users of MagicJack connect their telephone to the MagicJack unit and, through a yearly subscription, get unlimited local and long distance calling.  With the purchase of each unit, the purchaser received a 1-year subscription to use the service.  The MagicJack units are referred to herein as the "units."

7.      SEI is in the business of, among other things, selling retail products in the open market.

8.     On September 22, 2009, SEI and MJL entered into a Vendor Agreement (the "Vendor Agreement") pursuant to which SEI became an authorized dealer of MJL. *See* Vendor Agreement attached hereto as **Exhibit "A."** The authorized distributor of SEI was Front End Services ("FES"), which was the entity from which SEI was to receive and return the units. The Vendor Agreement included a Vendor Program Agreement ("VP Agreement") wherein SEI agreed to purchase a minimum of 68,300 units in conjunction with an advertising campaign. SEI could purchase these units at a special price.

9.     The VP Agreement governed and applied to those units that SEI purchased during the period from September 21, 2009 ("Effective Date") through December 31, 2009 (referred to as the "guaranteed sale period"). The VP Agreement permitted SEI, at SEI's sole discretion, to return to MJL some or all of the MagicJack units it purchased. SEI could return these units on or before January 31, 2010 for a full refund of the purchase price. The VP Agreement stated that the returned product "must be unopened and in re-sellable condition." Neither the VP Agreement, nor any other part of the Vendor Agreement defined the terms "unopened" or "re-sellable condition."

10.    The VP Agreement was silent regarding those items returned after January 31, 2010. The VP Agreement did not state that the units <u>could not</u> be returned after January 31, 2010. It simply provided that units "may be returned to MJL for a full refund of the purchase price on or before January 31st, 2010 at [SEI's] sole discretion." As such, it is apparent on the face of the VP Agreement that it did not preclude SEI from returning items after January 31, 2010. The VP Agreement is, however, ambiguous regarding items returned after January 31, 2010.

11. The VP Agreement provided that, upon the completion of the guaranteed sale period, MJL could inspect the returned merchandise for condition of salability and creditworthiness prior to the issuance of a credit for such returns to SEI. MJL had a total of 5 days from the end of the guaranteed sale period to conduct this inspection. At the end of the inspection, MJL was obligated to credit SEI for "all approved returns." The credits were to be administered electronically by store by FES. After final reconciliation for the returns, if the result was a receivable, then SEI was to invoice MJL for the receivable and MJL would have 15 days from the receipt of the invoice to pay the balance.

12. Per the terms of the VP Agreement, in September 2009, SEI received approximately 76,032 MagicJack units from MJL. With the exception of those free units provided by MJL, SEI paid for the units. Approximately 72,408 of the units were allocated to stores throughout the United States. Starting in January 2010, SEI began returning MagicJack units to FES per the terms of the Vendor Agreement. In total, SEI returned nearly 47,909 units. Of the total units returned, approximately 28,019 were returned on or prior to January 31, 2010. MJL took delivery from FES of approximately 17,015[1] returns, but has not processed or taken delivery of approximately 10,941 that were returned on or prior to January 31, 2010.

13. MJL has refused to pay SEI for all of the returned units. Instead, MJL unilaterally deemed approximately 60% of the returned units to be "unsalable" and refused to credit SEI with the value of those units. Furthermore, MJL has demanded a re-stocking/re-packaging fee of $5.00 per unit for those units it determined needed re-stocking/re-packaging, despite the fact that

---

[1] MJL picked up a total of approximately 20,341 units. Approximately 3,326 of those units were never shipped from FES to any SEI store.

the VP Agreement has no provision allowing such a fee to be imposed. MJL ultimately paid SEI $396,531.27, representing a fraction of the cost of the returned units. SEI has demanded $846,622.41 for the value of the remaining returned units. Defendant has refused to make such payment and the returned units remain at FES which continues to charge SEI for storage costs on the returned units.

## COUNT I
### (Breach of Contract)

14. Paragraphs 1 through 13 of this Complaint are incorporated herein by reference as if set forth verbatim.

15. MJL breached the Vendor Agreement. First, MJL breached the Agreement by failing to provide a full refund to SEI for all units returned on or prior to January 31, 2010, including approximately 10,941 units that MJL did not process, inspect, and failed to take delivery. Second, MJL breached the Vendor Agreement by claiming an excessive number of MagicJack units were not "[]opened or in re-sellable condition" in an effort to avoid paying SEI for full value for a large number of the returns it inspected. Third, MJL breached the Vendor Agreement by failing to inspect and accept approximately 19,890 units that were returned after January 31, 2010.

16. Per the terms of the VP Agreement, the MagicJack units purchased by SEI "may be returned to MagicJack for a full refund of the purchase price on or before January 31st, 2010 at [SEI's] sole discretion."

17. The Vendor Agreement did not prohibit the return of units outside of the January 31st, 2010 time period; rather, it is silent on how to treat those returns. This silence results in an ambiguity for which the Court is required to determine the Parties' intent and may require the introduction of parol evidence.

18. Per the terms of the VP Agreement, SEI returned a total of approximately 47,909 units to FES for MJL's inspection. Of those total returns, approximately 28,019 were returned on or prior to January 31, 2010. Of those returns, MJL failed to inspect or refund approximately 10,941 units. Because MJL failed to accept delivery of and refund the full purchase price of these units, MJL breached its VP Agreement with SEI and has damaged SEI in an amount equal to the purchase price paid for those units as well as storage costs and fees incurred by SEI from the date of the breach.

19. The returned units were subject to an inspection wherein the units were required to be "unopened and in re-sellable condition." For those units that MJL did inspect per the terms of the VP Agreement, it unilaterally determined that approximately 60% of such units were opened or not in re-sellable condition. Therefore, MJL did not accept and give SEI full credit for those units. Instead, it applied a repackaging fee of $5.00 to all of those units it unilaterally determined were "unopened and in re-sellable condition."

20. Although the VP Agreement did allow MJL to inspect the items and approve the returns, MJL has improperly claimed that an excessive number of those items were opened or not in a re-sellable condition. Contrary to its assertion otherwise, and upon information and belief, not all of the units that MJL refused to accept fit within either category. Accordingly, MJL has

breached the terms of the VP Agreement by refusing to give full credit for hundreds and possibly thousands of unopened and salable units, resulting in damages to SEI in an amount equal to the full value of those improperly designated units.

21. The undefined phrase "unopened and in re-sellable condition" creates ambiguity regarding the items MJL can properly exclude. Plaintiff seeks to present parol evidence to demonstrate the meaning of this phrase.

22. MJL has also refused to inspect, accept, or give credit for approximately 19,890 units that were returned after January 31, 2010. Instead, MJL apparently interprets the contract that it prepared in its favor to read that it is not required to accept any returns not received by FES on or before January 31, 2010. As such, this part of the agreement is also ambiguous and Plaintiff may seek the introduction of parol evidence to demonstrate its meaning.

23. Because the contract only speaks to whether MJL will provide a full refund for those items returned before January 31, 2010, those items returned after January 31, 2010 should be accepted for at least some, if not full, credit by MJL. Because MJL breached its obligations to accept returns after January 31, 2010 (or give some credit therefore), SEI suffered damages in an amount equal to the value of those approximately 19,890 units and all storage costs incurred by SEI with respect to such units.

24. Due to MJL's breaches, and per the express terms of the Vendor Agreement, SEI also seeks to recover its costs of litigation including reasonable and necessary attorneys' fees and costs incurred herein and all subsequent appeals, in an amount to be proven at trial.

## COUNT II
### (Declaratory Judgment)

25.  Paragraphs 1 through 13 of this Complaint are incorporated herein by reference as if set forth verbatim.

26.  Because the Vendor Agreement and VP Agreement are each ambiguous concerning the rights, duties and obligations of the parties, particularly as it relates to the units currently held by FES, Plaintiff seeks a declaration that it is entitled to full credit for all returned units and that all such items were "unopened" and "re-sellable" as those terms were intended to be interpreted.

27.  SEI also seeks to recover its costs of litigation including reasonable and necessary attorneys' fees and costs incurred herein and all subsequent appeals, in an amount to be proven at trial.

## COUNT III
### (Quantum Meruit)

28.  Paragraphs 1 through 13 of this Complaint are incorporated herein by reference as if set forth verbatim.

29.  Pleading in the alternative, SEI paid MJL for approximately 19,890 units that it returned after January 31, 2010.  SEI has requested that MJL accept the returned units and credit SEI with the cost of those units.  MJL has contended that there is no contractual requirement for them to give SEI credit for units returned after January 31, 2010.

30. Despite SEI's request, MJL has kept SEI's money and allowed the returned units to sit in storage. Under these circumstances, MJL is unjustly enriched and it would be inequitable to permit MJL to keep the money for units that have been returned.

31. Due to MJL's conduct, SEI suffered damages in an amount equal to the value of those approximately 19,890 units and all storage costs incurred by SEI with respect to such units.

## CONDITIONS PRECEDENT

32. All conditions precedent to the maintenance of this cause of action and Plaintiff's recovery thereon, including attorneys' fees, have occurred or been performed (or will be performed within the prescribed period).

**WHEREFORE,** Plaintiff, 7-Eleven, Inc., respectfully requests that upon final trial or hearing hereof, the Court issue a judgment granting Plaintiff:

1. Actual damages in an amount proven at trial, which are currently estimated to exceed $800,000;

2. Reasonable and necessary attorneys' fees incurred herein and all subsequent appeals, in an amount proven at trial;

3. Pre-judgment and post-judgment interest at the highest rates allowed by law;

4. Costs of court; and

5. Such other and further relief as may be just and proper.

CASE NO. 10-81124-CIV-RYSKAMP/VITUNAC

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all issues triable of right by a jury.

December 13, 2010　　　　　　　　　　Respectfully submitted,
Ft. Lauderdale, Florida

　　　　　　　　　　　　　　　　　By:   s/ Gregory A. Haile
　　　　　　　　　　　　　　　　　Gregory A. Haile, Florida Bar No. 606421
　　　　　　　　　　　　　　　　　ghaile@bergersingerman.com
　　　　　　　　　　　　　　　　　**BERGER SINGERMAN, P.A.**
　　　　　　　　　　　　　　　　　350 E. Las Olas Blvd., 10th Floor
　　　　　　　　　　　　　　　　　Ft. Lauderdale, FL  33301
　　　　　　　　　　　　　　　　　Telephone:  (954) 525-9900
　　　　　　　　　　　　　　　　　Facsimile:  (954) 523-2872

　　　　　　　　　　　　　　　　　**CO-COUNSEL**
　　　　　　　　　　　　　　　　　**KANE RUSSELL COLEMAN & LOGAN PC**
　　　　　　　　　　　　　　　　　Michael A. Logan
　　　　　　　　　　　　　　　　　State Bar No. 12497500
　　　　　　　　　　　　　　　　　Richard L. Hathaway
　　　　　　　　　　　　　　　　　State Bar No. 24032278

　　　　　　　　　　　　　　　　　1601 Elm Street
　　　　　　　　　　　　　　　　　3700 Thanksgiving Tower
　　　　　　　　　　　　　　　　　Dallas, Texas  75201
　　　　　　　　　　　　　　　　　Telephone:     (214) 777-4294
　　　　　　　　　　　　　　　　　Telecopy:       (214) 777-4299

　　　　　　　　　　　　　　　　　**ATTORNEYS FOR PLAINTIFF,**
　　　　　　　　　　　　　　　　　**7-ELEVEN, INC.**

CASE NO. 10-81124-CIV-RYSKAMP/VITUNAC

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of December, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing electronically.

By: ___s/ Gregory A. Haile_____
      Gregory A. Haile

CASE NO. 10-81124-CIV-RYSKAMP/VITUNAC

# SERVICE LIST
United States District Court for the Southern District of Florida
*7-Eleven, Inc. v. MagicJack, LP*
Case No. 10-81124-CIV-RYSKAMP/VITUNAC

| | |
|---|---|
| Janet T. Munn, Esq.<br>jmunn@rascoklock.com<br>RASKO KLOCK, ET AL.<br>282 Catalonia Avenue, Suite 200<br>Coral Gables, FL  33134<br>Telephone:  (305) 476-7101<br>Facsimile:  (305) 476-7102<br><br>*Counsel for Defendant, MagicJack, LP*<br><br>**(via transmission of Notices of Electronic Filing generated by CM/ECF)** | Michael A. Logan, Esq.<br>Richard L. Hathaway, Esq.<br>**KANE RUSSELL COLEMAN & LOGAN PC**<br>1601 Elm Street<br>3700 Thanksgiving Tower<br>Dallas, Texas  75201<br>Telephone:   (214) 777-4294<br>Telecopy:   (214) 777-4299<br><br>*Counsel for Plaintiff*<br><br>**(via transmission of Notices of Electronic Filing generated by CM/ECF)** |